THE NORTHAMPTON MUTUAL LIVE STOCK INSURANCE COMPANY v. WILLIAM TUTTLE.

1. The plaintiff is an insurance company of the State of Pennsylvania, its principal office located at Easton, in that state. The defendant made an application in this state to the company's agent resident here, for insurance on property in this state, and paid the premium, taking an agreement that a policy was to be issued when the application was approved by the company, and if not approved the premium to be refunded. The application was taken to the company's office in Easton, there approved, and a policy issued and there mailed to the defendant. *Held*, that this contract was made in Pennsylvania, and not in New Jersey, and would by comity be enforced here, although the agent had not complied with the statute of this state concerning foreign insurance companies.

2. A contract must be held to have been made where the last act necessary to complete it was done, when no mutual act remains to be performed to entitle either party to enforce it.

3. In this case the contract was complete as soon as the application was accepted and the policy deposited in the mail.

On *certiorari.*

Argued at June Term, 1878, before Justices VAN SYCKEL, DIXON and REED.

For the plaintiff, *J. G. Shipman.*

For the defendant, *B. C. Frost.*

The opinion of the court was delivered by

VAN SYCKEL, J. The plaintiff brought suit before a justice of the peace of the county of Warren, to recover the amount of an assessment made against the defendant upon a policy of insurance issued to him by the plaintiff company. The plaintiff recovered a judgment before the justice, which was reversed in the Warren Common Pleas, on the ground that the insurance company, plaintiff, was a foreign insurance company, and that the contract was a New Jersey contract, negotiated by an agent in New Jersey, contrary to our statute. *Nix. Dig.* 435, § 66; *Ib.* 436, § 73.

The policy was dated May 27th, 1872, and insured defendant for the term of one year. An assessment was made July 2d, 1872, which paid the company's losses to that date. The losses from July 2d, 1872, to January 14th, 1873, amounted to about $12,000, and this sum was the basis of the assessment for which the defendant was sued.

The property insured was in this state, where the defendant and Thatcher, one of the directors of the insurance company, resided when the policy was issued.

The application was signed by the defendant in this state, where Thatcher gave him a receipt, of which the following is a copy:

"Northampton Mutual Live Stock Insurance Company, of Northampton county, Pa.

"Received of Wm. Tuttle, for an insurance by the Northampton Mutual Live Stock Insurance Company against loss

by death upon the animals described in application, the sum of one dollar and thirty cents, being the amount paid for membership for the term of one year from the 27th day of May, 1872, for which said company agrees to issue a policy to said applicant when the application is approved, and if not approved, the above amount to be refunded to the said applicant.

" J. B. Thatcher,

"Dated May 27th, 1872.                               Agent."

Article VI. of the by-laws of the company provided that the agent of the company should give a receipt for the premium paid, and that the insurance should take effect from that time, provided the application was approved by the board of directors, or its executive committee, after which the policy would be issued ; and if not approved, the money would be refunded.

In this case the application for insurance was taken by Thatcher to Easton, in the State of Pennsylvania, where it was approved by the directors of the company, and the policy was there issued and sent by mail to the defendant, in New Jersey.

If the contract of insurance was made in the State of Pennsylvania, and was valid there, comity requires us to enforce it here. *Columbia Ins. Co.* v. *Kinyon,* 8 *Vroom* 33.

This case, therefore, turns upon the question whether it was made in this state.

Thatcher acted as the agent of the company, with authority to receive applications. He received the defendant's application, with the premium, which he transmitted to the company at its place of business in Pennsylvania. By the express terms of the receipt given by the agent to the defendant, the company had the option to approve the application and issue a policy, or to reject it and refund the premium. It was a mere proposition, from which the parties might have receded, and not a contract. Approval by the company was necessary to ripen it into a contract. Not until then did the minds of

the parties come together, and invest the transaction with the attributes of a valid agreement. The contract of insurance must be regarded as having been made when the company approved the defendant's application, and issued and transmitted to him their policy. *Hyde* v. *Goodnow*, 3 *N. Y.* 266; *Huntley* v. *Merrill*, 32 *Barb.* 626.

The contract must be held to have been made where the last act necessary to complete it was done.

Although there is some conflict in the cases, I think the weight of authority is, that when the offer of the insured was accepted, and the policy deposited in the post-office by the company, properly addressed to the insured, the contract was made. It did not remain incomplete until the insured, by receiving the policy, was notified of the acceptance of his proposal.

In *McCulloch* v. *Eagle Insurance Company*, 1 *Pick.* 278, the Supreme Court of Massachusetts, on the authority of *Cooke* v. *Oxley*, held that mailing a letter acceding to terms offered did not complete the bargain, but the views expressed by the court were modified in a later case, reported in 10 *Pick.* 330.

In *Adams* v. *Lindsell*, 1 *B. & Ald.* 681, the bargain was declared to be perfected when the letter was put in the mail, giving notice to the other party of the acceptance of his offer.

This question is ably reviewed by Justice Marcy, in *Mactier* v. *Frith*, 6 *Wend.* 103, in which the Court of Errors overruled the decision of Chancellor Walworth, that to make a valid contract it is not only necessary that the minds of the contracting parties should meet on the subject of the contract, but that fact must be communicated to each other.

The same rule prevails in the Supreme Court of the United States. *Tayloe* v. *Merchants' Fire Insurance Company*, 9 *How.* 390.

It has also the unqualified approval of Chancellor Kent. 2 *Kent's Com.* (6th ed.) 477.

The cases in this state are to the same effect. *Houghwout* v. *Boisaubin*, 3 *C. E. Green* 315; *Potts* v. *Whitehead*, 5 *C. E.*

*Green* 55; *Commercial Insurance Company* v. *Hallock*, 3 *Dutcher* 645.

In the case last cited, Justice Elmer says: " It being well and satisfactorily established as law that the acceptance of a proposition, and the sending notice thereof by mail, complete the bargain, although the letter never reaches its destination, it follows that the company were bound by what they did on that day, and had no power afterwards to revoke it."

A bargain must be considered as closed when no mutual act remains to be done to entitle either party to enforce it.

Under the adjudged cases it seems to be clear that if the assured had suffered loss the instant after the policy was mailed, he could have resorted to it for indemnity.

The case in hand is stronger than any of the cases cited, for here, by the express terms of the receipt, there was a stipulation on the part of the company to issue a policy when the application was approved.

After the approval the company could not have receded from it, but would have been bound to issue the policy. Their obligation to do so did not depend upon notice of acceptance to the insured, but upon the fact of acceptance.

It being conceded that the approval of the application was given in Pennsylvania, and the policy mailed there, the contract must be adjudged to have been made in that state, and not in New Jersey.

The contract, therefore, is valid, and comity requires its enforcement here. *Columbia Fire Insurance Company* v. *Kinyon*, 8 *Vroom* 33.

By the constitution and by-laws of the company, it is provided, that if it should happen that the funds on hand be insufficient to pay all losses and expenses, the directors shall, by resolution, levy a tax on the members of the company, as their policies stand unexpired on the books of the company, said tax to be levied on the amount insured.

The assessment in this case was made in accordance with this by-law, which the defendant, as a member of the plaintiff

company, is presumed to know; and is required to conform to. *Northampton Mutual Company* v. *Stewart*, 10 *Vroom* 486.

The judgment of the Warren Pleas, that the contract was void under the statute law of this state, was erroneous, and should be set aside.