**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5494-18T3

ESTATE OF EVELYN
GREENSTEIN, through HARVEY
GREENSTEIN, Administrator,

      Plaintiff-Appellant,

v.

REGENCY HERITAGE NURSING
AND REHAB CENTER, LLC, d/b/a
REGENCY HERITAGE NURSING
AND REHABILITATION CENTER,

      Defendant-Respondent.

_____

Submitted February 12, 2020 – Decided March 3, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0531-18.

Stark & Stark PC, attorneys for appellant (Jonathan Lauri, of counsel and on the briefs).

Marks O'Neill O'Brien Doherty & Kelly, attorneys for respondent (Melissa Jennifer Brown and Amanda Alexandra King, on the brief).

PER CURIAM

Plaintiff the Estate of Evelyn Greenstein appeals from a July 31, 2019 order granting defendant Regency Heritage Nursing and Rehabilitation Center's motion to dismiss plaintiff's complaint in favor of arbitration. We affirm.

Greenstein was admitted to defendant's facility in 2013 because she suffered from various ailments and required assistance with daily living activities. Greenstein's daughter, Susan Lusk, accompanied her to defendant's nursing home on the day of her admission.

Lusk alleged she was separated from her mother and taken to a conference room by a staff member who handed her a large stack of documents to sign. The staff member turned the pages of the document, pointed to them, and instructed Lusk where to sign or initial on the agreement. Lusk alleged she was not given time to read the agreement and the employee never mentioned the arbitration clause or informed her that the document addressed legal matters.

The agreement contained an arbitration clause, which stated:

> Arbitration. Any claim or dispute related to or arising from the Agreement of Resident's care at the Facility (whether based on contract or tort, in law or equity) shall be resolved by mandatory, final, binding arbitration in accordance with the rules of the American Arbitration Association ("AAA"), although the parties may choose to administer the arbitration through the arbitrator instead of the AAA; provided, however, that

2

A-5494-18T3

Resident/Responsible Party shall not be entitled to an award of exemplary or punitive damages. In agreeing to arbitration, Resident/Responsible Party acknowledges that Resident/Responsible Party understands that other options to arbitration exist, including but not limited to federal and state administrative remedies, and judicial remedies, and the Resident/Responsible Party further understands that these remedies are forever precluded, such that regardless of the nature of the complaint, it can only be resolved in arbitration. The right to a trial, and a trial by jury is of value and Resident/Responsible Party may wish to consult with counsel prior to signing this Agreement.

Any such arbitration must be requested in writing within one (1) year from the date of the party initiating the arbitration knew or should have known about the claim or dispute, or all claims arising from that dispute are forever waived. Any such arbitration (or court proceeding as applicable hereunder) shall be held in Somerset or Middlesex County, New Jersey. There shall be one arbitrator, who shall be either a retired New Jersey Superior Court judge or upon mutual consent one selected from the AAA roster of arbitrators with at least ten (10) years experience arbitrating commercial disputes. The arbitrator shall grant essential discovery. There shall be a pre-hearing management conference. The hearing shall be stenographically recorded. The arbitrator shall render written decision with findings of fact and conclusions of law. Judgment upon the award rendered through such arbitration shall be final and may be entered and enforced in any court having proper jurisdiction. Appeals can be taken for any issue cognizable under New Jersey law had the matter been tried to a court without a jury, except for discovery or evidential issues.

A-5494-18T3

The agreement also contained the following provision: "Binding Agreement: This is a legally binding contract. The Resident and/or Responsible Party may consult an attorney[,]" who can cancel the contract thereafter. Additionally, the agreement contained a clause stating: "No waiver. Failure of [defendant] to insist on strict compliance of any provision of this agreement shall not be deemed to be a waiver of that section of any rights and remedies available to [defendant]."

Lusk initialed the page with the arbitration language in three locations. She also signed the end of the agreement. Directly above her signature was the following language: "Signatures. By signing the undersigned intended to be bound by the Agreement, and acknowledge that they have read it, have had all questions posed to the Facility answered to their satisfaction, and have voluntarily agreed to its terms."

Plaintiff alleged Greenstein had multiple falls and developed pressure wounds during her stay in defendant's facility. These wounds worsened during her stay until they required surgical debridement. Plaintiff also alleged Greenstein suffered multiple bouts of dehydration, infections because staff did not clean her, and resided in a room with bed bugs. She passed away in August 2016.

A-5494-18T3

Plaintiff's counsel sent three letters to defendant all dated January 29, 2018, advising plaintiff was represented, describing the injuries Greenstein suffered at defendant's facility, and asserting defendant's negligence caused her injuries. Counsel's letters demanded a preservation of all evidence and that defendant's insurance company contact counsel.

In April 2018, plaintiff filed a four-count complaint against defendant in the Law Division alleging two counts of negligence, violation of the New Jersey Nursing Home Responsibilities and Rights of Residents Act, and wrongful death. After filing its answer and exchanging answers to interrogatories, defendant moved to dismiss the complaint and compel arbitration.

Following oral argument, Judge Michael J. Rogers issued a fifteen-page written decision granting defendant's motion. The judge concluded Lusk had authority to sign the document as the responsible party acting on behalf of Greenstein. The judge found

> defendant did not waive its right to insist on arbitration . . . [and] [c]orrespondence from [plaintiff's] attorneys . . . regardless of accusatory tone and demands for information, is insufficient in this context to constitute an arbitrable and ripe "claim or dispute" under the . . . agreement sufficient to trigger the arbitration limitations time period against the other party.

A-5494-18T3

In any event, under the terms of the arbitration agreement it was plaintiff's burden to file for arbitration.

The judge found the terms of the agreement were "clear and unambiguous. Each party knows their respective rights and responsibilities." Furthermore, "by signing the agreement, [Lusk] 'acknowledged that [she] . . . read it . . . and had all questions posed to the facility answered to [her] satisfaction.'"

The judge concluded as follows:

> This contract is moderate in its terms and not unfair to the resident. The resident benefits from procedural and substantive due process and, absent the right to trial by jury, enjoys a plethora of available remedies if the arbitration award is in plaintiff's favor. . . .
>
> . . . .
>
> Lusk was competent to read and understand the agreement, and had the opportunity to do so. She acknowledged that she read the agreement. . . . The two-paragraph arbitration clause in question is conspicuous in form and unambiguous in content. The right to a jury trial is clearly waived and the available remedies and procedures set forth in detail. The right to counsel is explained in separate sections of the admission agreement as well as the resident's right to cancel the contract. [Lusk] does not assert that she was not provided a copy of the admission agreement and had ample opportunity [to] reflect upon it further under the advice of counsel should she choose to do so. . . . There is nothing unconscionable about the agreement.

A-5494-18T3

> [Lusk's] statements in her unrebutted affidavit establish little more than her lack of scrutiny of the admission agreement and do not indicate any failure on the party of [defendant's] representative in presenting the agreement for her to sign.

The validity of arbitration agreements is a question of law and therefore reviewed de novo. Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). As a result, no special deference is owed to the trial court's findings. Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 445-46 (2014). "The issue of whether a party waived its arbitration right is a legal determination subject to de novo review[,]" however, "the factual findings underlying the waiver are entitled to deference and are subject to review for clear error." Cole v. Jersey City Med., 215 N.J. 265, 276 (2013).

Plaintiff raises the following points on appeal: (1) defendant waived its right to arbitration by failing to seek it in a timely manner, despite receiving three notices of claim from plaintiff's counsel; (2) the judge re-wrote the agreement when he concluded plaintiff had the burden to initiate arbitration; (3) the agreement to arbitrate lacked mutual assent because the arbitration provision was inconspicuous and not written in clear language, was a contract of adhesion, did not explain plaintiff was waiving a jury trial, and used unclear terms to

mislead plaintiff; (4) the arbitration provision is unconscionable because the contract was thrust at Lusk during the admission process, not explained to her, and she was not permitted a meaningful review of the document; and (5) the agreement violates federal law.

Having considered plaintiff's arguments, we affirm substantially for the reasons expressed in Judge Rogers' thorough and well-written decision. We add the following additional comments.

The Supreme Court has "recognized that parties may waive their right to arbitrate in certain circumstances." Cole, 215 N.J. at 276 (quoting Wein v. Morris, 194 N.J. 364, 376 (2008)). Waiver must be "voluntary and [an] intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177 (2003); see also Cole, 215 N.J. at 276. "[W]aiver can occur implicitly if 'the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.'" Id. at 276-77 (quoting Knorr, 178 N.J. at 177). "Such a waiver must be done 'clearly, unequivocally, and decisively.'" Ibid.

We agree there was no waiver here. The express language of the agreement stated defendant did not waive its rights if it failed to enforce aspects of the agreement. Moreover, defendant did not clearly, unequivocally, or

decisively relinquish the right to arbitration. To the contrary, it asserted the right to arbitration in its answer to the complaint and filed its motion promptly after plaintiff instituted its lawsuit.

We also reject plaintiff's argument that it was somehow defendant's burden to seek arbitration. As a general proposition, "courts should enforce contracts as made by the parties." Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 101 (1980). The court must ascertain and give effect to the mutual intention of the parties. Fletcher v. Interstate Chem. Co., 94 N.J.L. 332-33 (Sup. Ct. 1920). The language must be interpreted "'in accordance with justice and common sense . . . .'" Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956) (citation omitted).

Plaintiff's reading of the agreement, that defendant was required to initiate arbitration to address plaintiff's claims, is convoluted. Defendant asserted no claims against plaintiff. The agreement clearly stated arbitration was the sole forum to resolve all disputes. Therefore, a common sense reading of the agreement supports plaintiff's obligation to assert her claims in arbitration.

Contrary to plaintiff's argument, mutual assent was demonstrated. An enforceable arbitration agreement requires mutual assent. Flanzman v. Jenny Craig, Inc., 456 N.J. Super. 613, 621 (2018) (citing Atalese v. U.S. Legal Servs.

Grp., LP, 219 N.J. 430, 442 (2014)). "Mutual assent to an agreement requires mutual understanding of its terms." Atalese, 219 N.J. at 447.

"When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Stelluti v. Casapenn Enter., LLC, 203 N.J. 286, 305 (2010) (citing Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)). Furthermore, "it is clear that, in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Moreira Constr. Co. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967).

As Judge Rogers found, neither party alleged fraud. Absent fraud, Lusk's endorsement and signature of the agreement, including the clearly worded arbitration provision, formed a binding agreement.

The contract was not unconscionable. Determining unconscionability requires a fact-sensitive analysis. Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006) (citing Muhammad v. Cty. Bank of Rehoboth Beach, DE, 189 N.J. 1, 15-16 (2006)). In its analysis, the court must consider: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the "adhering" party; and (4) the public interests affected by the contract. Id. at 39-40 (citing Rudbart, 127 N.J. at 356).

10

Here, the subject matter of the agreement was clearly explained in plain language. Although Lusk signed the agreement during Greenstein's admission, she conceded she never sought additional time to review the document, did not ask questions of the staff member reviewing the document with her, nor had an attorney review the document, despite the opportunity to do so. The degree of economic compulsion and the public interests affected by the contract were not applicable considerations here.

Finally, the agreement did not violate federal law. The Federal Arbitration Act favors the enforcement of these agreements. 9 U.S.C. § 1-16; see also N.J.S.A. 2A:23(b)(1)(32). It states mandatory arbitration provisions in a nursing home or assisted living facility are enforceable if supported by consideration. See also Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012).

Federal regulation also states a long-term care facility may "choose[] to ask a resident . . . to enter into an agreement for binding arbitration" so long as it complies with the requirements laid out in the regulation. 42 C.F.R. 483.70(n). Those requirements include that the facility can neither make signing an arbitration agreement mandatory for admission, nor make the resident's right to remain in the facility contingent on signing a binding arbitration agreement. 42 C.F.R. 483.70(n)(1); 42 C.F.R. 483.70(n)(4). The facility must also make sure

11

the agreement is explained to the resident or her representative in a language she understands, the representative or resident acknowledges she understands the agreement, the agreement provides for the selection of a neutral arbitrator and venue convenient to both parties, and grants the resident or representative the right to rescind the agreement within thirty days of signing it. 42 C.F.R. 483.70(n).

The agreement and its arbitration provision met the regulatory requirements under federal law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5494-18T3